CASSEDY v. CASEY ET AL.

1. **Guardian and Ward:** PURCHASE OF LANDS: ACCOUNTING. Where a guardian invested money belonging to his wards in real estate without the order of court, taking the title in the name of his wards, it was held to be a sufficient accounting as to the wards who had attained their majority; and that, by retaining the legal title with knowledge of the facts, they had ratified the purchase.

2. ———: PAYMENTS BY GUARDIAN: CREDIT. The payment of money in good faith by the guardian for the benefit of the wards, or in respect to their property, but not shown to have been rightfully paid, will not justify the court in giving him credit therefor.

3. ———: MINORS: ELECTION: PRACTICE. An order of the court charging the guardian with the money of his wards, who are still minors, invested by him in lands, will not be modified at the request of the guardian, where the wards are not properly before the court. Should they elect, when arriving at majority, to retain the lands, the charge for money would be wrong, and the rights of the parties can then be determined.

*Appeal from Clinton Circuit Court.*

SATURDAY, APRIL 22.

THE questions presented in this case arise upon exceptions to a guardian's report in the matter of the guardianship of the minor heirs of Mary Neville, deceased. The guardian, Joseph Cassedy, is denominated the plaintiff, and the heirs, Margaret Casey, Frank Neville, Robert Neville, and Henry Neville, Jr., are denominated defendants. Mary Neville died in 1864, leaving surviving her, Henry Neville, her husband, and four children, Margaret, Frank, Robert and Henry, Jr., above named as heirs. In 1873 Cassedy was appointed their guardian. In 1880 he filed a report, and asked to be discharged as guardian of the two older children who had become of age. The report shows no funds remaining in the guardian's hands, but numerous payments and expenditures, and a balance due him from the two older children, Margaret and Frank, and he asks for an order that they be required to pay him such an amount respectively as shall be found due him from them.

The court approved the guardian's report in part, and disapproved it in part. The guardian appeals, and the wards, Margaret and Frank, appeal, the latter perfecting their appeal first.

*J. T. Hanna* and *A. R. McCoy*, for appellants.

*W. C. Grohe* and *D. W. Ellis*, for appellee.

ADAMS, J.—I. The appellants make thirty-six assignments of error. After arguing a very small portion of them they close by saying: "The heirs, without further specifying, insist that the record discloses the fact that the court below is without law or testimony in each of the thirty-six instances, referred to under the assignment of errors, and ask that the court make such finding from the record as will correct each of the thirty-six errors complained of."

It is our invariable practice to consider no assigned errors which have not been argued. We have repeatedly so held, and the appellee had reason to suppose that we should adhere to the rule so often announced.

The guardian sold under the order of court certain real estate in Clinton county, and, without any order of court, allowed a portion of the proceeds to be invested in real estate in Pottawattamie county, the title to which was taken in the name of his wards. The guardian in his report set out this purchase as being a proper accounting for the money thus used. The court held that it was a proper accounting so far as Margaret and Frank are concerned, but not a proper accounting so far as Robert and Henry, Jr., are concerned. The distinction was made upon the ground that the former have attained their majority, and by retaining the legal title to the land, have evinced their election to ratify the purchase. The wards Margaret and Frank insist that the court erred in holding that they had ratified the purchase. They say that they did nothing to ratify it, and that mere inaction should not be held to have that effect, and especially without proof that. they had full knowledge of all the facts. They say, further, that they filed in court for the guardian a quitclaim deed of their interest, and did so within a reasonable time.

1. GUARDIAN and ward: purchase of lands: accounting.

As to the matter of knowledge, we have to say that it is certain that they knew all the essential facts before they filed their exceptions to the guardian's report, because the report states the facts. They filed no quitclaim deed in court until nearly a month after they filed their exceptions. In the meantime they stood before the court as knowingly holding the land, and seeking at the same time to charge their guardian with the money with which it was purchased for them, and with the interest thereon. We think that by so doing they ratified the purchase.

II. The wards Margaret and Frank assign as error that the court erred in allowing the guardian $100 for his services.

The amount allowed as against each of the four wards was $25. We think that the allowance was not unreasonable. It was indeed a mere pittance as compared with the trouble which the guardian had. In argument it is insisted by the appellant wards that this allowance was made for the mismanagement of the estate. The mismanagement insisted upon consists in having invested the wards money in the Pottawattamie county lands. But as the wards had their option to retain the land, or hold their guardian for the money and interest, we do not think they are in a position to complain.

III. The guardian complains that he was disallowed a certain item of $566. This money was paid out by the guardian in good faith, but we are not able to say that it was rightfully paid, and we think that the ruling in respect to it must be allowed to stand. The evidence tends to show that one Catherine Neville, the wards' stepmother, made certain improvements upon the wards' Clinton county land; that when the same came to be sold at guardian's sale, she made some claim to an interest in the land; that the amount paid her was paid from the proceeds of the sale in extinguishment of her claim.

2. ——; payments by guardian: credit.

But it is not clearly shown to us that she had a claim against the wards' land, which she could have sustained, and if she had, the guardian's true course would have been to have sold the land subject to her claim. It is not the province of a guardian to adjust such claims, nor is it the province of a court, sitting merely in probate, to do so.

The guardian insists that it appears from an adjudication, subsequently had between the wards, and their father and step-mother, that the amount realized for them from the sale of their land, after deducting the $566, paid to the step-mother, was more than they were entitled to. Whether, if this is so, the guardian could be allowed credit for the $566, we do not determine. There is some reference in the evidence to an equitable action brought in Pottawattamie county, and we

find it stated that the guardian offered in evidence a certified copy of a decree, to which objection was made and overruled. Whether the copy was then introduced does not appear. There is no statement that it was introduced, and no copy of a decree is set out in the abstract which we can identify as a part of the record. Something purporting to be a copy of a decree in the District Court of Pottawattamie county, is printed in the abstract following the assignment of errors, but it is not so printed as to purport to be an abstract of a part of the record, and we see no evidence that it is.

Besides, if we should take this copy as evidence of all it purports to show, it does not show enough to aid the guardian. It shows that Catherine Neville, the step-mother, was entitled to three-eights of the Pottawattamie county land, the title to which had been taken in the name of the wards. But upon what the claim of Catherine was based, could be determined only by the pleadings, and they are not shown to us.

The guardian insists that it appears otherwise than from adjudication in the equitable action that the $566, never belonged to the wards. But the difficulty which he experiences is, that he involved his transaction in inextricable confusion. The wards owned an undivided two-thirds of the Clinton county land. Who owned the other third does not distinctly appear, but we think it was owned by the step-mother Catherine, or her husband, or both. One Christenson became the purchaser. He purchased from the guardian the undivided two-thirds belonging to the wards, and took from the guardian a deed of the same. The title to the other third he acquired by deed from the step-mother Catherine and her husband. The guardian reported to the court that he sold the undivided two-thirds interest belonging to his wards to Christenson for $1,800. Whether Christenson paid anything to anyone for the other one-third we are not permitted to know, but we conjecture that he did not, if we take the guardian's report as correct, that he paid $1,800 for the interest of the wards. It seems probable that he considered that he paid $1,800 for the

whole land, which would be $1,200 for the two-thirds belonging to the wards, and $600 for the other third. Now if such was the fact, and the transaction had been put in that form the guardian would have been saved much trouble. But he not only reported that he received $1,800 for the two-thirds interest belonging to his wards, but that is the amount expressed as the consideration in the guardian's deed, and it was upon the basis of that consideration that the court approved the deed. We do not see how he can be allowed to say now that he did not receive that amount as guardian. Besides it is not claimed by him that he made a mistake in the report, but simply that he ought to have a credit for the payment.

There is some evidence tending to show that a part of the $566 was paid for clothing furnished by Catherine for his wards. Under some circumstances he might have an allowance for such payment, but he cannot have it under the circumstances shown. It is impossible to determine what he paid, if anything, for clothing furnished; what he paid, if anything, for the improvements upon the land; what, if anything, he paid for land. The only fact established is that he paid $566 for something, and that is not sufficient to justify a court in giving him credit.

IV. The court charged the guardian with the money of the wards Robert and Henry, Jr., used in the purchase for 3. MINORS: them of the Pottawattamie county land. They election: practice. are still minors. They filed no exceptions to the report, and have as yet made no complaint. They may elect to retain the land, as it will be their right to do. If they do so elect, then the charge against the guardian for the money used would be wrong. The guardian asks for a modification of the findings and orders in respect to his wards Robert and Henry, Jr., so as not to conclude his rights.

To this we have to say that the accounting was as to Robert and Henry, Jr., an intermediate accounting. They were not in any proper sense parties to it, and are not parties to this appeal. It is not our province, we think, to direct any

modification of the findings and orders as to them.    We do not regard them as properly before us; it will be time enough to determine their rights when they are.

On both appeals the judgment must be

AFFIRMED.