ROSA BELLE WITT, Appellant, v. C. B. DAY, Administrator, J. L. BRACKEN, L. CARMICHAEL AND G. V. GOODELL.

**Wills:** CONSTRUCTION: *Pecuniary legacy.* A testator, after providing for the payment of debts and making specific devises of real estate, bequeathed, "the further sum of $500, to be paid out of my personal property, and concluded by authorizing an equal division of the residue. *Held,* that the pecuniary legacy was chargeable against the personal assets only, where it appeared that they were sufficient to pay it, together with all debts and costs of administration.

SETTING ASIDE SETTLEMENT ACCOUNTING: *Misjoinder of causes and parties.* A petition to set aside a settlement and release obtained by a guardian, and for an accounting, and for judgment against his administrator and the surety on the guardian's bond, is not objectionable, on the ground of misjoinder of causes of action.

EQUITY JURISDICTION: *Joinder of defendants.* The administrator of a deceased guardian and the sureties on the guardian's bond are properly joined as parties defendant in a suit in equity to set aside a settlement and release obtained by the guardian, and for an accounting, and for judgment against the administrator and such surety.

ACCOUNTING: *Filing claim with administrator.* When plaintiff in an action against the administrator of her deceased guardian and the sureties on the guardian's bond asked that a settlement and release obtained by the guardian be set aside for fraud,

and for an accounting, and for judgment against the administrator, and the sureties on the guardian's bond, an accounting is not necessary to enable her to maintain the action, nor is it necessary that she should first present her claim to the administrator.

LIMITATION OF ACTIONS: *Discovery of fraud.* A suit to set aside a settlement and release, and an order approving a guardian's final report, on the ground that the release was obtained by fraud, was not barred, though it was not brought within five years after plaintiff's majority, where she did not learn of the fraud alleged until shortly after bringing the action.

EVIDENCE. Plaintiff, when 19 years of age, came to the state to seek a settlement with her guardian. She had been absent 8 years, and knew but little about the condition of the estate. The settlement was conducted entirely by the guardian's bondsmen and their attorney, who were all men of large business ability and versed in such affairs. They knew that plaintiff was inexperienced and without any competent adviser; that she feared litigation—a fear that had been increased by their statement that the guardian's bond was invalid, the guardian insolvent, and that all she could get was by settlement; and though they could have ascertained the amount due her with reasonable certainty from the papers, which she examined, but was unable to understand, they misrepresented the amount due, and concealed the fact that the bondsmen held a mortgage from the guardian as indemnity. *Held,* that plaintiff was entitled to have the settlement and release thus obtained set aside for fraud.

*Appeal from Tama District Court.*—HON. OBED CASWELL, Judge.

WEDNESDAY, OCTOBER 10, 1900.

ACTION in equity to set aside a settlement, and for an accounting and judgment on a guardian's bond. Judgment was rendered dismissing plaintiff's petition and for costs, from which judgment she appeals.—*Reversed.*

*Caldwell & Wallers* for appellant.

*Willett & Herber* and *Struble & Stiger* for appellees.

GIVEN, J.—I. The pleadings are quite voluminous, and need not be set out, as the issues will appear from the following statement: C. W. Snyder died testate August 29, 1882, leaving his three minor children (Alva, aged 16; Cora, aged 12; and the plaintiff, aged 10) surviving him. His will was duly probated, by which his real estate was divided among said children, and a devise of $500 made, to be paid out of his personal property to the plaintiff, to equalize the division. It also provided that after the payment of debts and said $500 the residue of his property should be divided equally among said children. Horace Day was named in the will as executor, and he qualified and acted as such; defendants Bracken and Carmichael being the sureties on his bond. He was also named in the will as guardian for said children, and qualified and acted as such; the defendants Bracken, Carmichael, and Goodell being his bondsmen. Horace Day continued to act as such executor and guardian up to the time of his death,—about June 20, 1893. In obedience to a citation Horace Day filed a report as guardian, to which Alva and Cora took certain exceptions, which were heard on October 24, 1891; and it was found that Alva had been overpaid $747.99, and that there was due to Cora $2,986.79. "And, as to the matter of the construction of the will as to legacy of Rosa B. Snyder, this cause is continued." Rosa had been joined as one of the exceptors, but not having consented thereto, and at her request, her name was withdrawn. The defendant C. B. Day was appointed and qualified as administrator of the estate of Horace Day, deceased. About a year after her father's death, plaintiff was taken to Illinois to live, and has ever since resided in that state. In May, 1891, she came to Tama county, accompanied by her uncle Mr. Winans, and, after an interview with her guardian and his bondsmen, made a settlement with them; she receiving a payment of $1,072.73, in evidence of which she executed a writing as follows: "In the matter of the guardianship

of Alva L. Snyder, Cora G. Snyder, and Rosa Belle Snyder,
Minor Heirs of C. W. Snyder, Dec'd; H. Day, Guardian.
Disclaimer of Rosa Belle Snyder of the Exceptions Filed to
the Several Reports, etc. Now comes Rosa Belle Snyder, of
La Salle county, Illinois, and showeth to the court that she
is the same Rosa Belle Snyder named in the above and fore-
going caption; that she attained her majority and became
of the full age of eighteen years on the 18th day of July,
1890; that she has never authorized any person or persons
or attorneys to appear for her in the above-entitled matter,
either directly or indirectly, and that in truth and fact she
is not a party to any of the exceptions filed to the several
reports of her former guardian, the aforenamed H. Day,
and has no exceptions to make to his reports as such guard-
ian; that she hereby disclaims any interest either directly
or indirectly in any exceptions filed to the several reports
of said guardian in her name, and asks that the same may
not be considered by the court, and she hereby acknowledges
full and complete payment and satisfaction of all matters
included in said several reports, from James L. Bracken,
one of the bondsmen of said H. Day, guardian, so far as her
interest therein is concerned, leaving only her legacy of
$500.00, and her interest in the estate of her deceased father,
C. W. Snyder, yet in the hands of said H. Day, as executor,
etc., unsettled, aside from which all other claims against said
H. Day, growing out of said guardianship, are fully paid
off and discharged. And the undersigned asks that any and
all exceptions filed in her name to the several reports of said
H. Day, guardian, may be withdrawn, and that said guard-
ian's final report be approved. Reserving always the rights
of the undersigned to her legacy and interest in the estate
of said C. W. Snyder not included in the reports of guard-
ian. Rosa Belle Snyder. Duly verified by Rosa Belle Snyder
before J. W. Willett." It was at the time of this visit that
she directed the attorney prosecuting said exceptions to the

guardian's report to withdraw her name as one of the exceptors. Plaintiff claims that there is a much larger sum due to her than was paid, and that said settlement and release were obtained by fraud. Wherefore she asks that the same be set aside, and for an accounting, and for judgment against C. B. Day as such administrator, and against the other defendants on said guardian's bond. The defendants denied the alleged fraud, and denied that there is anything due to the plaintiff, and in these issues we have the case on its merits.

II. Before inquiring as to the merits of this case, we notice the claim of the defendants that plaintiff has no right to maintain this action. It is contended that there is a misjoinder of causes of action and of parties, but not so. The cause of action is the indebtedness of the guardian, and the parties are his bondsmen and administrator. The action is not upon the executor's bond. That bond was brought into the record on defendants' motion. It is not pleaded or relied upon by plaintiff as a basis for recovery. It is not necessary to an accounting, and is a mere incident to this case. It is said that bondsmen are not liable on the guardian's bond until there is an accounting in probate. When an accounting alone is asked, that is so, but more is asked in this case. Plaintiff is asking that the settlement and release be set aside for and on the part of these bondsmen,—a subject peculiarly cognizable in equity. For the same reason it was not necessary that the plaintiff should have first presented her claim to the defendant administrator. It is urged that the order in probate approving the guardian's final report could only be set aside by petition within one year, and that this action is barred because not brought within five years from the time plaintiff attained her majority. It is enough to say that, as will hereafter appear, plaintiff did not learn of the frauds alleged to have been perpe-

trated upon her until shortly before the bringing of this action.

III. We now inquire as to the alleged fraud in procuring the settlement and release, and in doing so we will not discuss the evidence in detail, but only those general features of it that we regard as controlling. We first notice the situation of the parties at the time of the settlement. Plaintiff was taken from Iowa by her aunt, with whom she lived in Illinois, when about 11 years of age, and attended the public schools. She did not return to Iowa until the time of the settlement, and knew but little about the condition of her own and her father's estate. Shortly before coming she had been solicited to join with her brother and sister in excepting to the guardian's report, but, being fearful of litigation, refused to do so. In May, 1891, when in her nineteenth year, she came to Iowa, to seek a settlement, accompanied by her uncle, Mr. Winans, a man of 60 years, and little if any experience in the settlement of estates. On arriving she at once informed the attorneys prosecuting the exceptions that she did not authorize their appearance for her, and would not be a party to the litigation, and immediately went to the defendant bondsmen and their attorney and sought a settlement. The guardian, Horace Day, took no part in the settlement. It was conducted entirely by the bondsmen and their attorney, all men of large business ability, and well versed in such affairs,—especially Mr. Bracken and the attorneys, who were most active in bringing about the settlement. They knew of the plaintiff's fear of litigation,—a fear that had been increased by the statement to her by some of the bondsmen and the attorney that the bond was invalid, the guardian insolvent, and that all she could get was by settlement. They knew that she was without an adviser other than her uncle, who was equally inexperienced as herself, and whose advice was, not to law, but settle. It is true, the attorney declined to negotiate with plaintiff in the absence of her attorney,

until informed that she had no attorney and had declined the services of those appearing for the exceptions, but it was not even suggested that she get some one to look into the matter for her. The matter to be ascertained at the settlement was the amount due to the plaintiff; and this Mr. Bracken or the attorney, with the papers before them as they were, could have done with reasonable certainty. It is true, the plaintiff examined the papers for herself; but it is manifest that she was unable to understand them, or to gather therefrom the amount that was due to her. It was represented to her that, aside from the $500 legacy, $1,-072.83 was the amount due to her; and, relying upon that representation, she received that amount and executed the release, when in fact there was a much larger sum due to her. Under the will the children were to share equally in what was left of the personal estate after the debts, costs, and the $500 legacy were paid. . Cora had been in schools away from home at greater cost than had been incurred in educating the plaintiff, yet shortly after this settlement the court, in passing upon the exceptions of Cora to the guardian's report, found that there was $2,986.79 due to her. No reason appears why at least that sum was not due to the plaintiff at the time of the settlement. It appears that Horace Day executed a mortgage on a farm to defendant Bracken to secure an indebtedness of $2,000 to a bank with which Mr. Bracken was connected, and also to secure his bondsmen. It does not appear satisfactorily what the bondsmen realized out of this farm, but it is shown that plaintiff was not told of this indemnity at the time of the settlement, and did not know it until shortly before the commencement of this action. Surely the circumstances under which these parties met to settle called upon the defendants and their attorney to act with the utmost good faith towards the plaintiff, and this we think they did not do. They added to her fear of litigation and anxiety for settlement by representing the bond to be worthless. They did not represent even ap-

proximately the amount due to her, and concealed the fact of the indemnity they held. As between persons of similar business experience, dealing at arm's length, it might be said that there was not such fraud as to vitiate this settlement, but not so in this case. The plaintiff is entitled to have this settlement and release, and the order in probate based thereon, discharging the defendants, set aside, and to an accounting.

IV.   Our conclusion is that the settlement, release, and order based thereon, approving the guardian's final report and discharging the bondsmen, should be set aside, an accounting had, and an order and judgment rendered for any balance found due to the plaintiff.   Question is made as to whether the $500 legacy to plaintiff is chargeable against the personal estate only, or against the whole estate, real and personal. The will answers this. After providing for the payment of debts, it makes specific devises of real estate, then bequeaths to plaintiff "the further sum of $500, to be paid out of my personal property," and concludes by providing for an equal division of the residue.   Clearly, the debts and costs of administration are to be first paid, then the legacy of $500, and the residue equally divided. The personal assets are largely more than sufficient to pay the debts, costs, and legacy.   Therefore we need not inquire whether, if it were otherwise, the legacy might be made a charge against the real estate.   We see no reason why the $500 should not be included in this accounting.   While we have much of the data before us that enters into this accounting, we have not sufficient to reach a correct and satisfactory result, and therefore the case is remanded for an accounting and decree in harmony with this opinion.— REVERSED.

GRANGER, C. J., not sitting.