IN RE GUARDIANSHIP OF FRANCIS FISHER and ALICE FISHER, Minors; LOUIS F. FISHER, Guardian, Appellee, v. FRANCIS FISHER et al., Appellants.

No. 44628.

MARCH 14, 1939.

Geiser & Donohue, for appellants.

Elwood, Lyons & Elwood, for appellee.

HAMILTON, J.—This record presents another unfortunate family legal entanglement, growing out of a guardianship matter, wherein the father acting as guardian of the property of his minor children and, because he was their father gave little attention to legal formalities in the management of the property, assumed that the natural ties of love and affection would remain unbroken and prompt all parties concerned to deal justly among themselves. In this particular case, the father, apparently without sufficient experience to realize the importance of observing certain legal requirements in the management of the property of his children, had the additional misfortune of having selected an attorney, who, not only neglected to competently guide the guardian but actually lulled him to sleep with soothing promises that everything would be all right, gave the guardian to understand he was doing and would continue to do whatever was necessary to be done in the matter and then did nothing. No reports of any kind were made and no inventory filed in the guardianship matter. When the children became of age, a settlement was made with them by paying each of them the sum of $300 in cash and giving a personal note for $200 which the children accepted in full settlement. There was no difficulty between them; the daughter, who was a school-teacher, stated to the father that she thought there was more than this amount coming but, nevertheless, they signed the receipt and accepted the money and notes and made no complaint for more than two years thereafter. It seems the father defaulted in payment of one of the notes and the daughter consulted an attorney in connection with the collection of the note and the trouble started.

The money involved came from the estate of the mother, Amelia Fisher, who died intestate on July 10, 1915, leaving surviving as her only heirs at law her husband, Louis F. Fisher, a son, Francis, three years old and a daughter, Alice, 18 months old. Louis F. Fisher was appointed administrator of her estate. The estate was fully settled and the administrator discharged on December 14, 1917. The final report showed funds distributed as follows: $511.50 to the surviving spouse, re-

ceipted for by Louis F. Fisher, individually, and $1,023 distributed to Louis F. Fisher, as guardian of the two minor children, and receipted for by Fisher in his capacity as guardian.

On November 13, 1936, Francis and Alice Fisher caused a petition to be filed praying that a citation issue commanding the guardian to show cause why he had not filed a final report and accounted for the money held by him as their guardian, the petition reciting that the guardian had received in excess of $1,000 belonging to the minors on or about November 11, 1916, and that, at the time they attained their majority, he paid each of them $300 in cash and gave his note for $200 to each of them; that no report of any kind had ever been made and no accounting for the interest accumulations on the money which he had received as their guardian. Citation was duly issued and Louis F. Fisher, as guardian, was required to file a report and accounting in said guardianship on or before November 23, 1936.

On January 2, 1937, the guardian filed a final report and petition for discharge in which he alleged that, on May 5, 1934, after the minors became of age, he made a settlement with them by paying each of them $300 in cash and delivering his note for $200 to each of them and that the guardian and the wards had agreed on this amount in settlement. Thereafter, on January 11, 1937, the guardian filed an amendment to the final report setting up in five separate divisions affirmative matters as follows:

That Amelia Fisher, the mother of the minors, died intestate leaving $1,200; that this money was mingled with that of the husband, the aggregate amount on deposit at the time of her death being $1,785; that through error on the part of the attorney, who represented Louis F. Fisher as administrator in the settlement of his wife's estate, this entire sum was inventoried and also shown in the final report as property belonging to the estate of Amelia Fisher and that, in receipting for said money in his individual capacity and as guardian, he made a mistake and that the receipts should have been for $315.50 each and the receipt which he signed for $1,023 was signed through error and mistake.

That in contemplation of death, Amelia Fisher gave all her property, including this deposit which was inventoried in the estate, to Louis F. Fisher, her husband, and requested him to

give each of the minors $500 of the money when they became 21 years of age.

That Louis F. Fisher, from the date of his marriage to Amelia Fisher until the 1st of March, 1936, lived on a certain 120-acre farm in Hardin county which was owned by James Praska, the father of Amelia Fisher; that, after the death of Amelia Fisher, there was a family agreement between Louis F. Fisher, as guardian, and James Praska for the benefit of the minor children whereby Fisher was to continue to occupy the farm during the lifetime of Praska and, at his death, a certain portion of the farm was to be transferred to the minors, Fisher to pay the taxes, insurance, and $100 cash per year and keep up the improvements and that, at the time he moved from the farm, Fisher was to make no claim for such improvements; that this agreement was made for the benefit of the minors and was subsequently approved and confirmed by them.

The guardian further alleged that, from the year 1921 to 1934, he was financially unable to contribute to the support of the minors and it was necessary to use their funds for necessities and that, since 1921, he spent $281.36 for necessities for Francis and $384.19 for necessities for Alice for which he asked credit.

That all of these matters were by the guardian explained to his wards and that the wards consented to this family arrangement and agreed to accept the $500 in full settlement and that they signed receipts acknowledging full settlement with him as their guardian and the guardian prayed that his final report be approved and that he be discharged and that he have judgment for costs.

By way of answer and objections to the final report, the children set up the fact that the guardian had receipted the administrator of the mother's estate for the sum of $1,023; that, at the time the $500 was paid to them, they did not know the amount of money which was due them; that no accounting had ever been made and they were not informed as to the amount due them; that they were not informed as to how the funds had been invested and no final report or explanation was made to them before signing said receipts and, by reason of said facts, a fraud was perpetrated upon them, one of whom was a minor at the time they signed the receipts; that they had no knowledge of the family arrangement alleged in the guardian's re-

port and denied the same and denied that said arrangement was binding upon them, there being no authorization or approval by the court of such arrangement' and same was never confirmed or approved by them.; that the alleged gift of the mother's prop- erty was also denied and the minors alleged that such matter was not a competent defense to the accounting of the guardian and that the guardian was bound by the adjudication of the probate court in the matter of the estate of Amelia Fisher, de- ceased, wherein it was found and determined that $1,023 was the property of said minors and was receipted for by the guard- ian as their property. They further denied that any part of the funds listed as property of Amelia Fisher in the settlement of her estate was the property of Louis F. Fisher, individually, and that said Louis F. Fisher by inventorying said property and accounting for the same in the final report as property of the estate, such report having been approved by the court, was bound by such adjudication and they asked that the guardian be required to account for said property and pay to each of them the sum of $895.46 with interest thereon at 6% per an- num from the 5th day of May 1934.

There was a trial to the court and judgment and decree approving the final report and discharging the guardian from further duties and responsibilities and exonerating his bondsmen and taxing the cost against the objectors. Motion for new trial was filed and overruled and the objectors have appealed to this court.

■ There is a wide variance between the father's version of what took place on the day of the settlement and the version given by the children. This being a law case tried to the court, the decision of the trial judge, where the facts are in dispute, may not be interfered with by this court if the decision is sup- ported by sufficient competent testimony. Evidence was intro- duced bearing upon the various matters set out in the final re- port, but, as we view the record, it is unnecessary to devote attention to any of the legal questions except the matter of set- tlement. There was evidence to the effect that it was the mother's request, made to the husband with death impending, that these two children be reared in the home of her sister, Mrs. Carrie Chihak. Accordingly, they were taken to the home of their aunt. They lived with and were cared for by her. The boy is now married and the girl is still residing with her aunt.

The father remarried and has several children by his second wife. There isn't anything in the record to indicate that there was any difficulty between the members of this family during all the years that intervened while the children made their home with this good aunt. She purchased their clothing and furnished the bills therefor to the father who paid the same. He paid nothing for their room and board except to furnish a milk cow and occasionally, when he butchered, some meat and also some wood for fuel. The evidence of the father substantiates his claim as to the arrangement with the grandfather concerning the farm which was to go to the children with all the improvements placed thereon at the grandfather's death. The first year the daughter taught school, she lived and boarded in her father's home. On the day of the settlement, to wit: May 5, 1934, Mr. Fisher took the two children to the law office of his attorney, now deceased, at Hampton, Iowa, for the purpose of paying them what he conceived to be the amount coming to them. According to his testimony, the whole matter was explained to them; that the vouchers for the bills which he had paid as alleged in his final report were produced; that he spoke of the mother's request that he pay the children $500 apiece when they attained their majority and of his willingness to turn over the farm with the improvements thereon upon which he had a right to reside until the grandfather's death. The daughter, at that time, informed her father that she thought there was more coming to them; that the father, in substance, said: "If you think there is more, you can sue me for it, if you think you will get anything."

From the testimony of the two children, it is evident that, at the time of the trial, they sought to put the father in as unfavorable light as possible. They denied practically the entire testimony of the father. It is their claim that he made no explanation concerning the manner in which the property had been handled by him as guardian. However, it does crop out in their testimony that they knew about the money; that they had talked to their grandfather and heard the grandfather talk with the father concerning it and, hence, they were not obliged to rely entirely upon what the father said. From the testimony, it is very evident that these children, at the time of the settlement, were intellectually very capable of coping with their father. He had difficulty in making himself understood

by the use of the English language while on the witness stand and the evidence shows that he was almost wholly dependent upon his attorney; whereas, the testimony of the two children reveals that they were bright intelligent young persons, well educated; that they had the ability and could have easily ascertained, by an examination of the records and by talking to their aunt and uncle and their grandfather, all the facts concerning their rights in the property in the hands of their father. They were not lulled into sleeping on their rights. Their evidence shows that they were alert to the situation and complained at what their father was doing yet they accepted the money and his notes. The son transferred his note to his sister and she collected this note and was endeavoring, even to the extent of bringing suit against her father, to collect the other $200 note. The father finally moved off of the farm and possession was surrendered to the son, the father keeping his agreement not to ask anything in return for what he had expended by way of improvements which he testified amounted to $3,000 to $3,500.

It is true that on the day of the settlement, the daughter lacked three months of being 21 years of age. These young people cannot be heard to say that they did not know their legal right to demand interest for they, like other people, are presumed to know the law, yet they allowed this matter to lie in abeyance from May 5, 1934, until this litigation was started on November 13, 1936, a period of two and one-half years. Certainly, this is an unreasonable length of time after the daughter became of age and could have, in the exercise of very ordinary caution, ascertained all that she now knows concerning this matter. According to their own testimony, they were informed that the father was not paying them in full. They testified that the father told them that he had suffered loss of money in bank failures and that they would have to share their loss with him. There is no claim that the father intentionally concealed anything from them. They say that he told them they could take the $500 or have a lawsuit. We are convinced that, despite the crude and unbusinesslike method of handling this estate, the father had no intention whatever of perpetrating any fraud upon these children.

The trial court had the benefit of being confronted with these witnesses with the opportunity of observing them while on the witness stand. In cases like this, where the credibility

or weight to be given to the testimony is of so great importance, this court has many times said that the decision of the trial judge should be given a great deal of weight.

We are not unmindful of the rules of law called to our attention by the appellant as laid down in the cases of Ellis v. Soper, 111 Iowa 631, 82 N. W. 1041; Witt v. Day, 112 Iowa 110, 83 N. W. 797; Van Rees v. Witzenburg, 112 Iowa 30, 83 N. W. 787; and Tucke v. Bucholz, 43 Iowa 415, wherein the court announced the principle that, to sustain a private settlement between guardian and his wards, it must appear that there was a full disclosure by the guardian of the condition of the estate and that the settlement was fair and equitable and voluntarily made with full knowledge of the facts relating thereto and that such settlements will be closely scrutinized by the court.

The foregoing cases were all brought in equity and were triable de novo, whereas, in the instant case, if the finding of the lower court has support in the record, it is conclusive on this court. In re Estate of Jefferson, 219 Iowa 429, at page 432, 257 N. W. 783.

The law in this state contemplates that a minor upon becoming of age is required to disaffirm contracts made during minority within a reasonable time after attaining majority or within a reasonable time after discovery of the fraud. Section 10493, 1935 Code of Iowa. See, also, Cassedy v. Casey, 58 Iowa 326, 12 N. W. 286; Hoover v. Kinsey Plow Co., 55 Iowa 668, 8 N. W. 658; and Holscher v. Gehrig, 127 Iowa 369, at page 373, 94 N. W. 486, 101 N. W. 759. There has been no disaffirmance on the part of the children.

We are of the opinion that there is sufficient evidence to support the finding of the trial court in approving the report which in effect approved the settlement made between the father and the children, the same having been ratified by failure to disaffirm within a reasonable period of time.

The case is accordingly affirmed.—Affirmed.

RICHARDS, STIGER, HALE, BLISS, OLIVER, SAGER, and MILLER, JJ., concur.